# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 21-490V

|  |  |
|---|---|
| TYHIEM CANNON, | Chief Special Master Corcoran |
| Petitioner, | Filed: November 17, 2025 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Sarah Christina Duncan, U.S. Department of Justice, Washington, DC, for Respondent.*

### RULING ON ENTITLEMENT[1]

On January 11, 2021, Tyhiem Cannon filed a Petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges a Table claim – that he suffered a shoulder injury related to vaccine administration ("SIRVA") after receiving an influenza ("flu") vaccine on November 11, 2020. *Id.* The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons set forth below, I find it more likely than not that Petitioner can establish the Act's "severity requirement," and that the onset of his injury occurred within 48 hours of the subject vaccination as alleged. Additionally, he has satisfied all other

---

[1] Because this Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

requirements for the claim. I therefore find that Petitioner is entitled to compensation in this case.

## I.    Relevant Procedural History

Approximately *16 months* after initiating his claim, Petitioner filed his vaccination record, one chiropractic medical record, a "medical report" authored by his chiropractor on December 13, 2021, and a declaration, followed by a statement of completion. ECF Nos. 15, 17. Respondent thereafter determined in the summer of 2023 that this matter was not appropriate for compensation, and he filed his Rule 4(c) Report defending this case on October 23, 2023.[3] ECF No. 30.

Respondent argues that Petitioner has failed to establish the Vaccine Act's severity requirement – specifically, that the residual effects of the alleged injury did not last for more than six months after the November 11, 2020 vaccination. Rule 4(c) Report at 5 (citing Section 13(a)(1)(A)). After a thorough review of Respondent's arguments, I issued an Order to Show Cause – outlining the critical deficiencies in the record regarding the statutory severity requirement.[4] *See generally* ECF No. 41. In response, Petitioner submitted a supplemental declaration and a supplement statement from his treating chiropractor. ECF Nos. 43-45. Respondent thereafter maintained his position to defend this case. ECF No. 47. This matter is thus now ripe for consideration.

## II.    Petitioner's Medical History

The medical record evidence is *extremely* limited in this case, consisting only of Petitioner's vaccination record and a 17-page chiropractic record. ECF Nos. 15-17. At age 46, he received the subject vaccination in his right deltoid on November 11, 2020. Ex. 1 at 2.

Approximately three weeks post vaccination (November 30, 2020), Petitioner saw

---

[3] Along with the filing of Respondent's Rule 4(c) Report, Respondent submitted a motion to preserve evidence, specifically social media posts created by Petitioner that Respondent asserted were potentially relevant to the issue of severity. ECF No. 31. Petitioner filed the requested social media posts in December 2023, and Respondent deemed the effort sufficient to comply with his concerns. ECF Nos. 36, 38, 40. I will note that it appears that the requested social medical posts submitted by Petitioner (dated October 2, 2022, October 29, 2022, and September 28, 2023) do not shed much light on the issue of whether Petitioner's injury persisted for more than six months post onset, as they are dated nearly *two years* post vaccination and *one-and-a-half years* (at the earliest) after Petitioner's last post-vaccination visit on April 23, 2021. Nonetheless, such posts may ultimately be relevant in determining an appropriate amount of damages to be awarded. A more thorough discussion of such evidence is thus not necessary at this time.

[4] My Order to Show Cause did not address Respondent's contentions regarding Table onset.

his chiropractor (whom he also saw for unrelated but concurrent low back pain) reporting "rt [sic] shoulder pain after a flue [sic] shot, on 11/11/20." Ex. 2 at 10. Upon examination, Petitioner exhibited decreased range of motion ("ROM") of the right shoulder to varying degrees: flexion measured at 115/180 degrees, extension at 20/50, abduction at 117/180, adduction at 23/50, internal rotation at 47/90, and external rotation at 51/90. *Id.* The chiropractor diagnosed Petitioner with "rt [sic] shoulder, lumbar sprain/strain." *Id.* at 11. Accordingly, the treatment plan contains notations regarding both the right shoulder and lumbar spine, including "electro-muscle stimulation, myofascial release, chiropractic manipulation, therapeutic exercises 30 minutes to increase [ROM], mobilize, stabilize of the lumbar spine." *Id.* The chiropractor's home instructions for Petitioner included "walk, stretches 30 minutes resume exercises below soreness threshold." *Id.*

On December 2, 2020, Petitioner returned to his chiropractor. Ex. 2 at 11. The same notation appears regarding the onset of Petitioner's right shoulder pain – that it began "after a flue [sic] shot."[5] *Id.* Petitioner continued to exhibit decreased ROM on examination (along with findings relevant to his lumbar spine). *Id.* The diagnoses and treatment plan were largely unchanged; however, the chiropractor added to the treatment plan to "increase [ROM], mobilize, stabilize of the *rt [sic] shoulder*, lumbar spine." *Id.* (emphasis added).

Petitioner attended regular follow-up chiropractic visits thereafter. During Petitioner's visit on January 16, 2021, he continued to exhibit reduced ROM. Ex. 2 at 11. The treater's diagnoses, treatment plan, and home instructions did not change. *Id.* From February to early April 2021, Petitioner returned to his chiropractor for right shoulder (and low back) pain on five occasions – on February 1, February 22, March 5, March 15, and April 9, 2021. *See id.* at 12-13. Petitioner exhibited diminished ROM during each session, and the chiropractor did not change the diagnoses or treatment plan regarding Petitioner's right shoulder. *See id.*

Petitioner's last chiropractic follow-up visit memorialized in the contemporaneous medical records occurred on April 23, 2021 – approximately five months and twelve days post-vaccination. Ex. 2 at 14. The chiropractor's physical examination of Petitioner's right shoulder showed decreased ROM, including diminished flexion measured at 163/180 degrees, extension at 42/50, abduction at 158/180, adduction at 40/50, internal rotation at 66/90, and external rotation at 67/90. *Id.* The visit notes contain the same diagnoses of "rt [sic] shoulder, lumbar sprain/strain," with unchanged treatment plans and home instructions, specifically "electro-musclestimulation [sic], myofascial release, chiropractic manipulation, therapeutic exercises 30 minutes to increase [ROM], mobilize, stabilize of

---

[5] This notation is repeated in the chief complaint section of *every* chiropractic visit during Petitioner's treatment course for his right shoulder (November 2020 – April 2021). *See* Ex. 2 at 11-14.

the rt [sic] shoulder, lumbar spine" and to "walk, stretches 30 minutes resume exercises below soreness threshold." *Id.* No other medical record evidence has been submitted.

### III.    Declaration and Other Evidence

#### A.  Declaration Evidence

In his first declaration (authored on June 2, 2022), Petitioner maintains that he experienced immediate shoulder pain upon injection. *See generally* Ex. 4. Specifically, Petitioner attests that "[w]hen [he] received the vaccine, the pain [he] felt was immediate and it progressively got worse." *Id.* ¶ 2.

Petitioner also provides more context to his limited medical care, explaining that before receiving the subject vaccine, he did not have a primary care physician, nor did he "ever visit an urgent care." Ex. 4 ¶ 1. Petitioner notes that when he decided to go to the doctor after the vaccination, he did not "have any medical insurance because [he] was let go from work and it's a pandemic so [he] can't work[;]" he therefore had "to be a cash patient in order to receive treatment." *Id.* ¶ 2. More so, Petitioner expresses that he "wish[ed he] could've received more treatment but financially [he] couldn't afford it. So, [he] just had to deal with [the shoulder pain]." *Id.* Petitioner does not describe the timeline of his injury with any further detail in this filing. *See generally id.* ¶¶ 1-6.

Thereafter, and in direct response to my Order to Show Cause, Petitioner submitted a supplemental declaration (dated September 26, 2024), describing his injury course in more detail. Ex. 7. Specifically, he attests that "from April 2021 to December 2021, [he] experienced significant right shoulder pain[.]" *Id.* ¶ 1. He explains that "[a]t this time, [he] was laid off from [his] job and [his] then wife was also unemployed. No medical insurance . . . and we were still in the Pandemic." *Id.* ¶ 2. He attests that he could not afford to keep getting treatment "which is why there is a gap in treatment." *Id.*

During this "gap," Petitioner states, he alternatively used "over the counter pain meds, [] hyper ice shoulder therapy and pain cremes." Ex. 7 ¶ 2. He notes that in January 2021, he bought a device to provide heat and vibration to his shoulder, which he "wore regularly . . . especially . . . during the spring and summer of 2021,[6] when [he] was unable to afford to be seen for formal care." *Id.* Petitioner also points to his role as a caregiver to his mother with Parkinson's as a reason he "didn't have time to go back to be seen back in 2021." *Id.* ¶ 3. No other declaration or affidavit evidence has been

---

[6] Along with his supplemental declaration, Petitioner submitted an unauthenticated copy of a receipt for his purchase of this shoulder device (dated January 30, 2021). Ex. 7 at 3. He also submitted unauthenticated images of what appears to be Petitioner wearing the device, dated March 6, 2021. *Id.* at 6-8.

submitted.

### B.  Other Supporting Evidence

Petitioner has submitted a "medical report" authored by his treating chiropractor and dated December 13, 2021 – approximately eight months since Petitioner's last visit in April of that year. Ex. 3. The chiropractor described Petitioner's "over 6 months of consistent [c]hiropractic care" listing the "first treatment" date as "11/30/2020" and the "last treatment" date of "12/11/2021." *See id.* at 1-2. The treater also noted Petitioner's chief complaint of right shoulder pain and stiffness that "began shortly after receiving the [i]nfluenza vaccination into the right upper arm." *Id.* at 1.

The chiropractor's report included physical examination findings – but without further specifying the date commensurate with those findings. Ex. 3 at 1. The chiropractor wrote that Petitioner exhibited "pain upon palpation, pain upon active and passive motion, decreased [ROM], and mild swelling/inflammation around the vaccine injection site." *Id.* He included the degrees of ROM as follows: flexion - 126/180, extension - 27/50, abduction - 128/180, adduction - 29/50, internal rotation - 51/90, external rotation - 56/90. *Id.* The treater also wrote that "[d]uring the evaluation of the right shoulder, [Petitioner] stated that the pain interferes with his ability to complete [ADLs] . . . there was muscle guarding present." *Id.* The chiropractor diagnosed Petitioner with right shoulder pain and recommended future care based on Petitioner's ongoing symptoms, including an MRI and evaluations with orthopedics, neurology, and internal medicine. *Id.* at 2.

Additionally (and in response to my Order to Show Cause), Petitioner submitted a supplemental medical report from this treating chiropractor, dated September 27, 2024 – now over three years since Petitioner's last visit with this treater on April 23, 2021, and nearly four years post-vaccination. Ex. 8. The chiropractor vaguely asserted that Petitioner "continued to experience pain and right shoulder symptoms and engaged in self-care during" the period from April 23 to December 11, 2021. *Id.* at 1. According to the chiropractor, Petitioner's pain "became so severe," that he returned to the chiropractor's office "to be seen for treatment on December 11, 2021." *Id.* The chiropractor alleges that during the December 11th visit, Petitioner "reported that the right shoulder pain had continued and was affecting his ability to perform daily activities." *Id.*

## IV.    Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act

Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[7] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

Section 11(c)(1) also contains requirements concerning the type of vaccination received and where it was administered, the duration or significance of the injury, and the lack of any other award or settlement. *See* Section 11(c)(1)(A), (B), (D), and (E). With regard to duration, a petitioner must establish that he suffered the residual effects or complications of such illness, disability, injury, or condition for more than six months after the administration of the vaccine. Section 11(c)(1)(D).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

---

[7] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381 at 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184 at 204 (2013) (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to

afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### A.  Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence supports the conclusion that Petitioner has satisfied the QAI requirements for a Table SIRVA.

### 1.  Petitioner Has No Prior Right Shoulder Condition or Injury

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent has not contested that Petitioner meets this criterion, and there is nothing in the filed evidence to suggest otherwise.

### 2.  Onset of Petitioner's Injury Occurred within 48 Hours of his Vaccination

Respondent argues Petitioner cannot establish onset, in part because his closest medical record came less than three weeks post vaccination, on November 30, 2020. Rule 4(c) Report at 8. More so, even though Petitioner described his pain during that visit as beginning "after a flue [sic] shot, on 11/11/20[,]" this report is "exceedingly vague and is mimicked at each of his chiropractor follow-up visits without any further detail." *Id.* (internal citations omitted).

These objections are ultimately unpersuasive, however, when considered against the totality of the evidence. The aforementioned medical records from Petitioner's chiropractic visits, *though limited in both quantity and detail,* establish that Petitioner reported onset close-in-time to the subject flu vaccination, that he sought treatment the same month as his vaccination, and that he indeed was experiencing symptoms in the relevant timeframe.

First, the records show that Petitioner sought treatment in a relatively timely manner (i.e., 19 days after vaccination). It is common for SIRVA petitioners to delay seeking treatment, thinking the injury will resolve on its own, since patients are often told by medical providers at the time of vaccination to expect some soreness and pain for a period of time after. Here, however, the delay was not appreciably long – and the fact that

treatment was sought in a relatively short timeframe is supportive of a close-in-time onset, especially when the medical record is as limited as it is in this case.

Second, although it appears that Petitioner's report regarding the onset of his symptoms was indeed carried over from visit to visit, Petitioner affirmatively linked his shoulder pain to the November 11, 2020 flu vaccine – beginning with the November 30th treatment encounter. Ex. 2 at 10. This reporting provides additional support for Table-consistent onset. More so, Petitioner's statements to his chiropractor regarding the onset of his right shoulder pain corroborate the contention in Petitioner's declaration regarding immediate onset. *See* Ex. 4 ¶ 2.

Accordingly, I find there is preponderant evidence that establishes the onset of Petitioner's right shoulder pain more likely than not occurred the same day as vaccination, and thus within the Table timeframe. To find otherwise, the record would have to contain instances of contradictory onset, which are not present here.

### 3. Petitioner's Pain was Limited to his Right Shoulder

The third criterion for a Table SIRVA states that the pain and reduced ROM must be limited to the shoulder in which the subject vaccination was administered. 42 C.F.R. § 100.3(c)(10)(iii). Respondent has not contested that Petitioner meets this criterion, and there is nothing in the filed evidence to find this element not met.

### 4. There is No Evidence of Another Condition or Abnormality

The last criterion for a Table SIRVA states that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not raise an objection to this criterion and based on the existing record I therefore find it met.

### B. Factual Findings Regarding Severity

While Petitioner has satisfied his burden under the QAI for a Table SIRVA, the next (and more critical but closely-contested) issue to be resolved is whether Petitioner has demonstrated that he suffered "residual effects or complications of [the injury alleged] for more than six months after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i).

A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. § 13(a)(1)(A). To satisfy the six-month requirement, "[a] potential petitioner must do

something more than merely submit a petition and an affidavit parroting the words of the statute." *Faup v. Sec'y of Health & Hum. Servs.,* No. 12-87V, 2015 WL 443802, at *4 (Fed. Cl. Spec. Mstr. Jan. 13, 2015). Rather, a petitioner is required to "submit supporting documentation which reasonably demonstrates that the alleged injury or its sequelae lasted more than six months[.]" *Id.*

Additionally, "the fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *See Morine v. Sec'y of Health & Hum. Servs.*, No. 17-1013, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Hum. Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) (finding that a petitioner suffered from residual symptoms that due to their mild nature did not require medical care and thus that "a discharge from medical care does not necessarily indicate there are no residual effects"). In another SPU case, where a petitioner's last treatment was at five months and nine days, the petitioner was found to meet the six-month requirement. *Schafer v. Sec'y of Health & Hum. Servs.*, No. 16-0593V, 2019 WL 5849524 (Fed. Cl. Spec. Mstr. Aug. 28, 2019). In that case, based on the petitioner's symptomology and progression, the special master noted that it was unlikely "that petitioner's shoulder symptoms would have resolved within [the next] 22 days." *Id*. at *7.

As discussed above, Petitioner's treatment records suggest that the onset of his symptoms began within 48 hours of his November 11, 2020 vaccination (likely on the day of vaccination) – or by no later than November 13, 2020. Therefore, he logically must demonstrate that his right shoulder injury continued to or through May 13, 2021 (at the latest). *See,* e.g., *Herren*, 2014 WL 3889070, at *2.

The records discussed above establish that on April 23, 2021 (merely *20 days* shy of the severity "cut-off"), Petitioner exhibited diminished ROM of the right shoulder in all directions upon examination. *See* Ex. 2 at 14 (measuring Petitioner's ROM at the following degrees: flexion measured at 163/180 degrees, extension at 42/50, abduction at 158/180, adduction at 40/50, internal rotation at 66/90, and external rotation at 67/90). The diagnosis and treatment plan on that date still included those pertaining to the right shoulder and Petitioner received right shoulder treatment on that date. *Id.* The records from Petitioner's last chiropractic visit on April 23, 2021, thus do not show that Petitioner's symptoms had resolved by this date but were instead likely ongoing.

I will acknowledge, however, that the April 23rd records only vaguely refer to home instructions, including to "walk" and "stretches 30 minutes resume exercises below soreness threshold." Ex. 2 at 14. The ambiguousness of these home instructions thus provides some reason to doubt whether such recommendations were made to address Petitioner's lumbar spine or right shoulder symptoms. Still, the physical examination

findings of the right shoulder here are enough to support the conclusion that Petitioner's injury was not likely to resolve soon after this visit, or even within the next 20 days. *See,* e.g., *Schafer*, 2019 WL 5849524, at *7 (finding based on a petitioner's reports and a treater's proposed treatment course during the last visit pre-gap in care, that an injury was not likely to resolve soon after that visit). This is especially true considering the slow rate of improvement in these measurements throughout Petitioner's chiropractic treatment course. *See id.* at 10-14.

Additionally, I do not construe Petitioner's decision to forego treatment after April 2021 as compelling evidence that his injury had fully resolved by that time. Rather, Petitioner's decision to cease treatment thereafter has a sufficiently reasonable explanation (that he had lost his job and thus did not have medical insurance, making him a cash patient, and thus he could not afford ongoing treatment, especially during the Pandemic). *See* Ex. 4 ¶¶ 1-6. I have previously given weight to the fact that "at the outset of the [P]andemic, individuals reasonably curtailed (or even avoided) medical treatment for non-emergency matters, and that in many cases this could explain a gap in treatment." *Keeling v. Sec'y of Health & Hum. Servs.,* No. 20-2048V, Slip Op. 32, (Fed. Cl. Spec. Mstr. Oct. 19, 2022). It is also persuasive and helpful to Petitioner on this point that he did not obtain *any* medical treatment after this time, including for any non-shoulder, acute issues.

Although I have determined Petitioner's injury extended through the May 13, 2021 severity "cut-off" date, I must note, however, that I give limited weight to Petitioner's chiropractor's December 13, 2021 "medical report" in resolving the issue of severity. This document purports to show findings from a physical examination (perhaps from December 2021), but the date of those findings is not further specified (outside of the date the report was drafted on December 13, 2021). More so, the noted physical findings such as "mild swelling/inflammation around the vaccine injection site," were not contained in the contemporaneous records created closer in time to the subject vaccination – at a time when such a physical finding would have been more likely to be present. This inconsistency in physical examination findings thus causes me to question the veracity of the contents of the December 2021 report.

In addition, the December 2021 report does not describe with *any* specificity the extent of Petitioner's ongoing pain after the April 23, 2021 visit, and before Petitioner allegedly returned to care in December 2021 – thus failing to directly bear on the issue of severity at hand. Rather, the treater's report merely states that Petitioner's pain and mobility restrictions continued for more than six months despite treatment. Ex. 3 at 1. And this report was prepared over a year post-vaccination, almost eight months after Petitioner's last visit at the chiropractor's office in April of the same year, and *after* the filing of the instant claim.

Likewise, I am not *much* relying on the filings submitting in direct response to my Order to Show Cause (Ex. 7 - Petitioner's supplemental declaration and Ex. 8 - Petitioner's chiropractor's supplemental statement), as they were drafted in pursuit of litigation (and after the critical deficiencies in the record had been identified). Plus, similar to the earlier declaration and treater statement, neither filing describes with sufficient particularity the course of Petitioner's injury during the period after he ceased treatment in April 2021 and through the six-month "cut-off" in May 2021. Rather, both filings vaguely refer to ongoing pain during the time between Petitioner's chiropractor visits in April and (allegedly) December 2021. And, while Petitioner points to his use of a shoulder sleeve in January and March of 2021, this evidence does little to advance his arguments regarding ongoing sequalae through *May* of that year. Still, to the extent that Petitioner's supplemental statements are corroborated by those in his original declaration (i.e., his explanation for ceasing care due to financial difficulties and not having medical insurance), I will give such statements appropriate weight. *Compare* Ex. 4 ¶ 2, *with* Ex. 7 ¶ 2. Thus, after consideration of the entire record, the evidence supports a finding that severity has been met.

### C.  Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not further dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly in his right shoulder on November 11, 2020, in California. Ex. 1 at 2; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for his injury. Pet. ¶ 5; Section 11(c)(1)(E) (lack of prior civil award). As stated above, I have found that the onset of Petitioner's right shoulder pain was within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this requirement). This finding also satisfies the requirement that Petitioner's first symptom or manifestation of onset occur within the time frame listed on the Vaccine Injury Table. 42 C.F.R. § 100.3(a)(XIV)(B) (listing a time frame of 48 hours for a Table SIRVA following receipt of the influenza vaccine). Therefore, Petitioner has satisfied all requirements for a Table SIRVA. Additionally, as determined above, Petitioner has established the six-month severity requirement. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement).

## Conclusion

Petitioner has *just barely* established the Vaccine Act's temporal severity requirement, and that his injury is consistent with a Table SIRVA claim. Additionally, he has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

Compared to other SIRVA injuries, however, Petitioner's right shoulder pain and related symptoms do not appear to have been especially severe, even at the time he did obtain treatment. Significantly, his treatment course consisted of a handful of chiropractic visits and conservative home care only. And, he did not seek *any* follow up care after December 2021 – which underscores the very mild nature of his injury.

Thus, although the medical records do allow for the conclusion that Petitioner's injury meets the Act's severity requirements, those same records establish an injury that will not entitle Petitioner to anything more than an *extremely modest award* of pain and suffering even at full value of this case (likely not to exceed $5,000.00 - $10,000.00). I encourage the parties to engage in efforts towards the informal resolution of damages with that parameter in mind. A separate Damages Order will be issued concurrent with the filing of this Ruling.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master